IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS FRY, and all others )
similarly situated, )
 )
              Plaintiff, )
 )
    v. )    No. 06 C 3723
 )
EXELON CORPORATION CASH BALANCE )
PENSION FUND, )
 )
             Defendant. )

## MEMORANDUM OPINION AND ORDER

At issue in this case is whether, upon leaving employment, plaintiff Thomas Fry (and potentially others similarly situated) was entitled to a lump sum distribution from his "cash balance" retirement plan (defendant Exelon Corporation Cash Balance Pension Plan ("the Plan")) that included a "whipsaw calculation." See generally Berger v. Xerox Corp. Retirement Income Guarantee Plan, 338 F.3d 755, 757-63 (7th Cir. 2003); West v. AK Steel Corp., 484 F.3d 395, 399-401 (6th Cir. 2007). Whether Fry was entitled to a whipsaw calculation depends on the definition of "normal retirement age" as used in the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

The "whipsaw calculation" has its origin in an IRS Notice directing that, in calculating a lump-sum distribution paid prior to normal retirement age, the value of a participant's account under certain cash balance plans must be projected to normal retirement age using the plan's interest crediting rate, then discounted back to its present value using a variable interest rate prescribed in the Internal Revenue Code. IRS Notice 96-8, 1996-1 C.B. 359, 360. If a plan's interest rate is higher than the statutory discount rate in effect at the time of payment, the resulting lump-sum benefit will be greater than the employee's account balance.

Participants who elected such lump-sum distributions thus received a windfall--a distribution reflecting future interest credits, which could then be invested by the participant and earn interest a second time. By contrast, participants who left their account balances in the plan until normal retirement age, or who requested payment at a time when the plan's projected investment rate was lower than the statutory discount rate, received interest only once. Whipsaw calculation also created an incentive for employers to offer low investment crediting rates to avoid such a result, thereby reducing pension benefits for all employees. See H.R. Rep. No. 109-232(II), at 127 (Dec. 6, 2005).

The Pension Protection Act of 2006 now allows cash balance plans to make distributions at any time based on participants' account balances without performing a whipsaw calculation. 29 U.S.C. § 1053(f) (2006). See also 26 U.S.C. § 411(a)(13) (2006). The Plan in this case preceded the Act and this provision is not applicable.

The parties agree that a participant in a cash balance plan is not entitled to a whipsaw calculation if he or she has already reached normal retirement age at the time of the event entitling him or her to a lump sum distribution. Article 2(21) of the Plan defines normal retirement age as "With respect to a Participant's Cash Balance Account, the earlier of (a) the date the Participant completes five years of Vesting Service and (b) the later of (i) the Participant's 65th birthday, and (ii) the fifth anniversary of the date the Participant commenced participation in the Plan." Named plaintiff Fry already had five years of vesting service when his employment ended, so defendant did not include a whipsaw calculation in his lump sum distribution. Plaintiff contends that, except for those who begin their pertinent employment after turning 60, "normal retirement age" under ERISA can only be a specified age and not a specified term of service. Since the Plan does not specify an age, plaintiff contends that the default age of 65 is deemed to

be the normal retirement age for purposes of applying provisions of ERISA and the IRS Notice requiring a whipsaw calculation. Presently pending is defendant's motion to dismiss the complaint.[1]

For purposes of ERISA:

> (24) The term "normal retirement age" means the earlier of--
> (A) the time a plan participant attains normal retirement age under the plan, or
> (B) the later of--
> (I) the time a plan participant attains age 65, or
> (ii) the 5th anniversary of the time a plan participant commenced participation in the plan.

29 U.S.C. § 1002(24).

Defendant contends that the fact that the statue measures normal retirement age based on service _time_ supports that the measurement can be service time as defined in the Plan. Plaintiff contends subsection (A)'s use of "age" means that the measurement under that subsection must be an age, not a term of service. Under plaintiff's theory, because it is based on a term of service, "normal retirement age" as used in the Plan does not qualify as a "normal retirement age" as that term is used in

---

[1]Defendant moved to dismiss before plaintiff moved for class certification. Plaintiff has not attempted to pursue class certification while the motion has been pending. Class certification will be denied without prejudice and the claims of the putative class will be dismissed without prejudice.

§ 1002(24)(A). If a plan does not itself specify a normal retirement age, plaintiff argues, normal retirement age for purposes of applying ERISA provisions, including any necessary whipsaw calculation, is age 65. See Geib v. New York State Teamsters Conference Pension & Retirement Fund, 758 F.2d 973 976-77 (3d Cir. 1985); Laurent v. PriceWaterhouseCoopers LLP, 448 F. Supp. 2d 537, 544, 547 (S.D.N.Y. 2006). Cf. Janowski v. International Brotherhood of Teamsters Local No. 710 Pension Fund, 673 F.2d 931, 937 (7th Cir. 1982), vacated in part on other grounds, 463 U.S. 1222 (1983).

Before turning to the merits, defendant's contention that Fry's claim should be dismissed for failure to exhaust administrative remedies will be considered. Although exhaustion is an affirmative defense, it may be considered on defendant's motion to dismiss because plaintiff expressly alleges in the complaint that he did not pursue administrative remedies. See Engel v. Town of Roseland, 2006 WL 3513900 *3 (N.D. Ind. Dec. 5, 2006). Also, plaintiff concedes that exhaustion may be raised on a motion to dismiss.

ERISA does not have a statutory provision requiring exhaustion of administrative remedies prior to filing a lawsuit. See In re Household International Tax Reduction Plan, 441 F.3d 500, 502 (7th Cir. 2006). Courts, however, have the discretion

to decline to consider ERISA claims that have not first been raised in administrative proceedings that were or still are available. See id.; Ames v. American National Can Co., 170 F.3d 751, 756 (7th Cir. 1999). Ordinarily, it is appropriate to require exhaustion. Ames, 170 F.3d at 756. Reasons for requiring exhaustion include: "the plan's own review process may resolve a certain number of disputes; the facts and the administrator's interpretation of the plan may be clarified for the purposes of subsequent judicial review; and an exhaustion requirement encourages private resolution of internal employment disputes." Id.

In the present case, there may have been a possibility of resolving this case during administrative proceedings, but there is no indication that either side was amenable to such a resolution. This is not a case where a factual dispute needs to be resolved nor is any interpretation of the Plan required. The dispute between the parties involves interpretation of a statute, not interpretation of the Plan. When interpretation of ERISA itself is the only issue, administrative exhaustion is not required. Donaldson v. Pharmacia Pension Plan, 435 F. Supp. 2d 853, 860-61 (S.D. Ill. 2006); Eaton v. Onan Corp., 117 F. Supp. 2d 812, 838-39 (S.D. Ind. 2000). This case will not be dismissed for failure to exhaust administrative remedies.

Turning to the merits, there is no conclusive statutory language or agency interpretation supporting one side or the other. Plaintiff contends that the use of "age" in subsection (A) should be read as requiring an age standard. That subsection, however, does not use "age" as a stand-alone term, but instead states "normal retirement age under the plan." Moreover, the statute references the "time" at which the participant attains normal retirement age, not the "age" at which the participant attains normal retirement age. While not conclusive, that leaves open the possibility that a plan could define "normal retirement age" based on years of service, just as § 1002(24) includes the possibility under subsection (B)(ii) of defining "normal retirement age" based on the non-age standard of participation anniversary. The use of "age" in subsection (A) does not unambiguously require that a plan define "normal retirement age" based on the participant's age.

Plaintiff relies on administrative interpretations as well. None of the cited regulations or Revenue Rulings are conclusive support. Revenue Ruling 78-120, 1978-1 C.B. 117, provides that a defined benefit pension plan can qualify under 26 U.S.C. § 401(a) even if it has a retirement age less than age

65.[2]  While Rev. Rul. 78-120 states that a plan "may" specify any age under 65 as the normal retirement age, it does not state that normal retirement age must be stated as a specific age. Moreover, the issue it was addressing did not require determining if such a limitation applied.

In a supplementary submission,[3] plaintiff also cites to the Treasury Regulation amplifying on the Internal Revenue Code's (26 U.S.C. § 411(a)(8)) definition of normal retirement age. The Internal Revenue Code's statutory definition is identical to the statutory definition contained in ERISA. The Treasury Regulation provides in part:

> (b) Normal retirement age--(1) General rule. For the purposes of section 411 and the regulations thereunder, the term "normal retirement age" means the earlier of--

---

[2] Revenue Ruling 78-120 cites an earlier Revenue Ruling (Rev. Rul. 71-147, 1971-1 C.B. 116) for the proposition that a normal retirement age under age 65 must be consistent with the age employees normally retire in the industry. In 1980, Rev. Rul. 71-147 (which concerns profit sharing plans) was superseded and it was no longer required that a retirement age under age 65 be consistent with customary practices in the industry. See Rev. Rul. 80-276, 1980-2 C.B. 131. Contrary to plaintiff's contention in his surreply, Rev. Rul. 80-276 does not state that normal retirement age under a plan must be defined by age.

[3] Plaintiff submitted this as a citation to supplemental authority even though it was not a new citation (like a new case) and had been previously cited by defendant in its reply. Nevertheless, the court granted leave to submit the citation and will consider the contentions that accompanied its submission.

> (i) The time specified by a plan at which a plan participant attains normal retirement age, or
> (ii) The later of--
> > (A) The time the plan participant attains age 65, or
> > (B) The 10th anniversary of the date the plan participant commences participation in the plan.
>
> . . . For purposes of subdivision (I) of this subparagraph, if an age is not specified by a plan as the normal retirement age then the normal retirement age under the plan is the earliest age beyond which the participant's benefits under the plan are not greater solely on account of his age or service.

26 C.F.R. 1.411(a)-7(b)(2).

Relying on the last sentence, plaintiff contends this shows another measure must be used when no age is specified as a normal retirement age. Defendant essentially argues that the reference to a plan having no age specified as normal retirement age should be read as meaning a plan that has no provision for normal retirement age whatsoever. It would seem that, if intended to exclude definitions of normal retirement age that were based on time of service, the regulation would have more clearly and directly so stated. Even assuming the Plan at issue in this case is one in which no age is specified by the Plan as the normal retirement age, normal retirement age would still be five years of service time. The alternative when no age is specified is the age at which benefits are not greater solely

based on age or service. Plaintiff points to no provision in the Plan that, after vesting at five years of service, increases benefits because of age or service. Defendant points out that any increased benefits after five years of service are based on (a) additional contributions based on a percentage of compensation earned or (b) interest earned on existing amounts. Plaintiff points to no contrary provision. Thus, even using the alternative measurement of normal retirement age contained in the regulation, normal retirement age under the Plan could occur at the completion of five years of service.

Plaintiff also relies on Laurent, 448 F. Supp. 2d at 545-46. Laurent primarily relies on the holding in Duchow v. New York State Teamsters Conference Pension & Retirement Fund, 691 F.2d 74 (2d Cir. 1982), cert. denied, 461 U.S. 918 (1983). In Duchow, the Second Circuit followed the plain language of 29 U.S.C. § 1053(a) in holding that a plan must provide that pension benefits can vest either by reaching normal retirement age or by satisfying one of the three service requirements then set forth in § 1053(a)(2). Id. at 77-79. In emphasizing that normal retirement age and these vesting requirements are distinct, the Second Circuit made the point that the former is an age requirement independent of service time while the latter requirements were all based on service time. See id. at 78. Whether, consistent with § 1002(24)(A), normal retirement age

could be measured by service time was not an issue before the court. The statement that normal retirement age is independent of service time was dictum; the court otherwise held that the plain language of the statute (as well as its purpose and legislative history) required that either reaching normal retirement age or satisfying a provision of § 1053(a)(2) be sufficient for vesting. See Duchow, 691 F.2d at 78-79. "In sum, we conclude that the language, history and purposes of ERISA point forcefully to the conclusion that the first clause of § 203(a) imposes a vesting requirement that is independent of the service-period vesting standards imposed in § 203(a)(2)." Id. at 79. Also at issue in Duchow was whether the then 10th-anniversary requirement of § 1002(24)(B)(ii) meant 10 years after starting employment or 10 years of actual service. In holding that it meant the former, the Second Circuit again noted the dichotomy between the service-time standards and the normal retirement age standard. Duchow, 691 F.2d at 80. Again, that is dictum since the plain meaning of anniversary is a recurring date, not a requirement of continuous work or employment. Id. at 79-80.

While the dictum in Duchow provides some support for the holding in Laurent, it is weak support since the Duchow case did not actually address the issue of a normal retirement date based on service time, which is the primary issue raised in the pending

motion and also a central issue in the <u>Laurent</u> case. Because <u>Duchow</u> is <u>dictum</u>, the statutory language[4] and any relevant administrative interpretations must be considered. As discussed above, the Revenue Rulings and regulations cited by plaintiff do not support plaintiff's position.

<u>Laurent</u>, 448 F. Supp. 2d at 545, also cites <u>Deak v. Masters, Mates & Pilots Pension Plan</u>, 821 F.2d 572, 575 n.5 (11th Cir. 1987), <u>cert. denied</u>, 484 U.S. 1005 (1988), but that case only states that normal retirement age is a term of art under ERISA without discussing its actual meaning. Additionally, <u>Laurent</u> cites Rev. Rul. 78-120. <u>See</u> <u>Laurent</u>, 448 F. Supp. 2d at 546 (misciting it as Rev. Rul. 78-20). Laurent states that, in that Ruling, "I.R.S. described normal retirement age as a 'certain specified age.'" The quoted language from the Revenue Ruling, however, was describing the provisions of the particular plan that was the subject of the Revenue Ruling, it was not describing plans or normal retirement age in general. <u>Laurent</u>'s stated reliance on Rev. Rul. 78-120 is misplaced.

For the foregoing reasons, <u>Laurent</u> is not found to be persuasive.

Other cases are cited in support of defendant's position: In <u>Nichols v. Board of Trustees of Asbestos Workers Local 24</u>

---

[4] Neither party contends there is legislative history that clarifies the meaning of the statute.

Pension Plan, 1 E.B.C. (BNA) 1868 (D.D.C. Feb. 23, 1979), the court held that a plan provision providing for an unreduced "normal pension" with 25 years of service at any age meant that 25 years of service constituted normal retirement age as that term is used in § 1002(24). The court cited a pre-ERISA Revenue Ruling that states normal retirement age is the lowest age specified in a plan at which an employee can retire without permission and at the full rate for service already performed. See Nichols, 1 E.B.C. at 1870 (citing Rev. Rul. 78-446, 1971-2 C.B. 187). Since the plaintiffs in the case qualified for an unreduced pension with 25 years of service even though they were under the age 65 requirement that they would have to meet with less service time, the court determined that was the youngest age at which they could retire with unreduced benefits and therefore constituted normal retirement age for those plaintiffs. Id. at 1870. The court also cited Rev. Rul. 78-120 as involving essentially the same situation as in Nichols.[5] Thus Nichols holds that a retirement provision based on a term of service may constitute normal retirement age. Positively citing Nichols, the Third Circuit held that an employee who qualified for "normal retirement" prior to age 65 because he had 25 years of service

---

[5]Although not specifically noted by the Nichols court, Rev. Rul. 78-120 cites now-superseded Rev. Rul. 71-147 for the proposition that normal retirement age is the earliest age at which a participant can retire with unreduced benefits.

had reached normal retirement age and therefore had accrued benefits. See Ryan v. Asbestos Workers Union Local 42 Pension Fund, 27 F. App'x 100 (3d Cir. 2002).[6]

There are no controlling nor compelling precedents on the issue before the court. While the language of § 1002(24)(A) is open to interpretation, the better reading is that a plan may set a time (prior to the employee reaching age 65) that will qualify as normal retirement age, either by setting a specific age, a period of service or participation, or a combination of age and service/participation. In this case, that means that named plaintiff, who had more than five years of qualifying service, had reached normal retirement age at the time he retired. Therefore, he was not entitled to an additional distribution based on a whipsaw calculation.

Plaintiff also has Accrued Frozen Benefits that he had accrued in a traditional retirement plan prior to its conversion to the cash balance plan. The five-year service rule does not apply to those benefits. In response to the motion to dismiss, plaintiff contends he is at least entitled to a whipsaw calculation for those benefits. In its reply, defendant responds that age 65 retirement was already used in determining how much

---

[6]Although not precedential, unpublished Third Circuit opinions may be cited for their persuasive value. 3d Cir. Internal Operating Proc. 5.7; Spencer v. Wal-Mart Stores, Inc., 2005 WL 3654381 *3 n.4 (D. Del. June 24, 2005).

was in that account. In his surreply, plaintiff does not dispute that representation. To the extent there is an actual dispute about how the Accrued Frozen Benefit was calculated, plaintiff should first invoke administrative proceedings since it would involve a dispute about how the plan was administered. It appears, however, that defendant has accurately represented that the Accrued Frozen Benefit is already calculated based on an age 65 retirement and therefore an additional whipsaw calculation is not required. Plaintiff's individual claim will be dismissed in its entirety.

IT IS THEREFORE ORDERED that defendant's motion to dismiss [21] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against named plaintiff Thomas Fry dismissing plaintiff's cause of action with prejudice and dismissing the putative class claims without prejudice.

ENTER:

*William T. Hart*

UNITED STATES DISTRICT JUDGE

DATED: AUGUST 31, 2007